CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 AUG 20 PM 4:30

DEPUTY CLERK _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

AMBER BIZIKO,           §
                        §
    Plaintiff,          §
                        §
v.                      §          No. 1:16-CV-0111-BP
                        §
STEVEN VAN HORNE, et al.,    §
                        §
    Defendants.         §

## REPORT AND RECOMMENDATION

Before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 74) and Defendants' Motion for Partial Summary Judgment (ECF No. 75). Each party has filed a response in opposition, *see* Defs.' Resp. (ECF No. 78) and Pl.'s Resp. (ECF No. 79), and a reply brief, *see* Pl.'s Reply (ECF No. 80) and Defs.' Reply (ECF No. 81). The parties have provided evidentiary support and other documents with their filings.[1] Both motions are fully ripe and ready for ruling.

Pursuant to Special Order No. 3-326 issued on June 15, 2019, the undersigned will preside over all civil cases assigned or referred to Magistrate Judge E. Scott Frost until a replacement magistrate judge has been appointed for the Abilene Division. This action has been referred pursuant to 28 U.S.C. § 636(b). Because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and

---

[1] *See* Exs. 1-8 to Pl.'s Mot. (ECF Nos. 74-1 to 74-8); App. Supp. Defs.' Mot. (ECF No. 75-1); Exs. A-D to Defs.' Resp. (ECF Nos. 78-1 to 78-4); Exs. A-J to Pl.'s Resp. (ECF Nos. 79-1 to 79-10); Ex. A attached to Pl.'s Reply (ECF No. 80-1); Exs. A-C attached to Defs.' Reply. (ECF Nos. 81-1 to 81-3).

recommendation, directs the Clerk of Court to reassign the case to Senior District Judge Sam R. Cummings for all further proceedings, and recommends that the Court (1) **GRANT in part and DENY in part** Plaintiff's motion and (2) **DENY** Defendants' motion.

## BACKGROUND

On June 22, 2016, Plaintiff commenced this action by filing a civil complaint against defendants Steven Van Horne ("SVH") and Michelle N. Van Horne ("MVH"), "d/b/a A Habitat for Learning," ("AHFL" or "Habitat") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-16, for failure to pay overtime. (*See* ECF No. 1, Compl.). Nearly two years later, on June 18, 2018, SVH testified as corporate representative for Habitat that Plaintiff had entered into an agreement with another entity, Loving Individuals Generating Healing Today ("LIGHT"), to perform volunteer work for Habitat in exchange for a cash stipend from LIGHT for the hours volunteered. (*See* ECF No. 58-2 at 18-35).

On July 9, 2018, Plaintiff moved to file a second amended complaint based on this alleged newly discovered evidence. (*See* ECF No. 56, Second Mot. for Leave to Am. Compl.). As the motion remained pending, Defendants deposed Plaintiff on August 3, 2018. (*See* ECF No. 78-3 at 1). She testified that SVH did not want her to report any hours over forty because "he didn't want to do the time and a half." *Id.* at 24. When asked, "The over 40 hours, who was that work for?", she responded "A Habitat for Learning." *Id.* She further testified that she had never heard of a "LIGHT Charitable Participation Record" and had no knowledge of LIGHT. *Id.* at 26. When pressed about her attorneys moving to add LIGHT as a defendant, she indicated that she did not understand the questioning. *Id.* at 26-27. She later reiterated that she knows nothing about LIGHT. *Id.* at 42.

2

With her reply brief filed August 13, 2018, Plaintiff submitted the full SVH deposition transcript from June 18, 2018, to support her position that newly discovered information justified amending her complaint to add a new defendant. (*See* ECF No. 58-2). When the Court granted Plaintiff permission to file a second amended complaint on September 24, 2018, it noted "an unusual procedural background" in addition to the unusual twist "that according to Defendants, Plaintiff both volunteered and worked for pay at AHFL," whereas Plaintiff claims to have "never worked as a volunteer at AHFL." (ECF No. 61, Mem. Op. & Order, at 1-2).

At this point, there is no reason to reiterate the atypical background, but information submitted with the motion to amend is relevant to a major issue in this case – Plaintiff's employment relationship with defendants. In addressing that motion and without making any determination as to its factual accuracy or credibility, the Court considered the deposition testimony of SVH regarding the alleged volunteer work arrangement between Plaintiff and LIGHT.[2] *See id.* at 3, 6-9. It summarized that testimony as follows:

> While experiencing financial difficulties while working for AHFL, Plaintiff approached Mr. Van Horne asking to work overtime because she needed additional funds. AHFL did not need any employee to work overtime. It did not approach Plaintiff and ask her to work overtime. When she informed Mr. Van Horne about her financial problems, he mentioned LIGHT as a potential aid to her problems. He told her that he was involved in an outreach organization that could help if she were volunteering for a non-profit organization, such as AHFL. Even though AHFL had no reason to give anyone overtime on a regular basis, he suggested LIGHT as a way "for her to receive more money." Although she initially declined to explore the volunteering option, a few weeks later, she asked if she could get the help from the outreach organization.

---

[2]The parties have provided much, but not all, of this deposition testimony as summary judgment evidence. (*See* ECF No. 74-1, Habitat Corp. Dep.; ECF No. 78-2, Habitat Corp. Dep.). For the omitted part, the Court may take judicial notice of its own records, *United States v. Cisneros*, 755 F. App'x 422, 423 (5th Cir. 2019) (per curiam), and matters of public record, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Because Plaintiff both worked and volunteered at AHFL, she would note on the far right end of her time sheet the hours that she had volunteered. So, for example, "if she worked four hours for the day and volunteered three hours, she would write down the times that she worked, from what time to what time, and then she would just simply put three hours or four hours that she volunteered." Whether she was volunteering or working for pay at AHFL, she performed the same duties. AHFL did not combine the volunteer hours with the work-for-pay hours to calculate overtime pay. Instead, as Plaintiff requested, her stipend from LIGHT was paid at her normal hourly rate multiplied by the number of hours that she volunteered.

*Id.* at 3 (citations omitted). After considering applicable "legal principles, the briefing, prior court orders, pertinent background information, and the proposed amended complaint, the Court grant[ed] Plaintiff leave to amend to name LIGHT as a new defendant." *Id.* at 11.

In that amended complaint, Plaintiff adds LIGHT as a new defendant and sues the four defendants for alleged failures to pay overtime as required by 29 U.S.C. § 207(a) of the FLSA. (*See* ECF No. 62, Second Am. Compl., ¶¶ 1-2). In her present motion, Plaintiff seeks summary judgment on one issue – that the two entity defendants "constitute a single employer under the FLSA" but if the Court finds otherwise, she urges it to find that they "constitute a single joint employer." (ECF No. 74 at 1). In their motion, Defendants seek summary judgment for all claims against LIGHT and for claims asserted against MVH to the extent her liability is based on alleged actions taken on behalf of LIGHT. (ECF No. 75 at 2-7).

The following facts are drawn from the parties' pleadings, briefs, and evidence filed in this case. When "both sides move for summary judgment," courts may "recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence." *Leal v. Magic Auto Touch Up, Inc.*, No. 3:16-CV-0662-D, 2018 WL 297339, at *1 (N.D. Tex. Jan. 4, 2018). To

the extent any fact is disputed, it will be so stated.

## I. Defendants

Habitat is a private, non-profit school with children ranging in age from newborns to sixteen. (ECF No. 78-2, Habitat Corp. Dep., at 8, 18).[3] It is comprised of eleven buildings at three locations: Beltway (eight buildings at 3242 Beltway South in Abilene), Tuscola (two buildings at 410 Graham Street in Tuscola), and Sayles (one building at 1957 Sayles Boulevard in Abilene). *Id.* at 8-9, 15. Four individuals sit on its board: Carlton Lyons, Mark Almeida, Andraes Royal, and MVH. *Id.* at 10-11.

LIGHT is a charitable organization that provides services for low income people who are having difficulties "making ends meet." (ECF No. 79-2, Corp. Dep. LIGHT, at 10). SVH has also described it as "an outreach program" designed to provide help to persons in need. (ECF No. 78-2 at 16). It obtains funding through "different volunteering systems," private donors, and a childcare facility it operates under the name "Children of Light," which has about fifty children enrolled. *Id.* at 54-55. Its director is Kathy Larry. (ECF No. 79-2 at 12). According to SVH, it has shared a mailing address with Habitat at the Sayles location; has a physical address at 588 East Ambler in Abilene;[4] and has four board members: himself, David Mrotek, David Als, and

---

[3]In general, pinpoint citations to depositions are to the page of the deposition, not the page of the exhibit. Because defendants' appendix is not separated into exhibits, citations to it will be to the page of the appendix. Furthermore, when two or more exhibits duplicate one another or the appendix, the citation may be limited to one source. For instance, because ECF No. 78-2 substantially overlaps ECF No. 74-1 – both presenting portions of the same corporate deposition for Habitat – citations are generally to the more extensive ECF No. 78-2.

[4]While testifying as a corporate representative of LIGHT, board member Mark Almeida testified that to "his understanding, the business address is the same as we have for Habitat," 3242 Beltway South. (ECF No. 74-2, Dep. Almeida, at 11).

Mark Almeida. (ECF No. 78-2 at 15-17, 52-53; ECF 79-2 at 12). Nevertheless, tax documents filed by the two entities show the same address (3242 Beltway South); business purpose (primary purpose is to provide development and educational services for children and families); and officers or trustees (Carlton Lyons, Mark Almeida, Andreas Royal, and MVH). (*See* ECF Nos. 74-3, 74-5, 74-7 (2014-16 taxes for LIGHT) at 1-2, 7; ECF Nos. 74-4, 74-6, 74-8 (2014-16 taxes for Habitat) at 1-2, 7).

SVH founded Habitat and is an administrator for it but does not sit on its board. (ECF No. 78-2 at 11). He worked with Plaintiff on a day-to-day basis for the first part of her employment. *Id.* at 12. He did not supervise her as an immediate supervisor, but he "would know what was going on." (ECF No. 75-1 at 12). He and MVH provided supervision above her immediate supervisor. (ECF No. 74-1). Although he had authority to hire and fire Plaintiff, such decisions were for the board. (ECF No. 75-1 at 12).

SVH also testified that he was a founder and board member of LIGHT. (ECF No. 79-2 at 9; ECF No. 78-2 at 17). As a board member, SVH would "help make the decisions" when certain corporate matters would arise, such as "whether we were going to spend in a certain area or not." (ECF No. 79-2 at 11). In his role at LIGHT he worked with Plaintiff in that he "enrolled her as a client." *Id.* at 9. He explained that he also worked with Plaintiff at Habitat and because she was experiencing financial difficulties, he told her about his involvement with LIGHT, a company that "pretty much assists people who are in a state like her." *Id.* at 9-10. He "enrolled her as one who would receive benefits from LIGHT, if she was volunteering at another company, which at the time [Habitat] was a non-profit organization" that qualified her for the benefits. *Id.* at 10. When Plaintiff provided services to Habitat through this arrangement with LIGHT, she

6

answered to him as a board member for LIGHT and as Habitat's administrator. (ECF No. 74-1 at 56). It was up to the board to ultimately end the stipend, but if needed, SVH had authority to discipline Plaintiff. (ECF No. 75-1 at 12-13).

MVH is a board member for Habitat, (ECF No. 78-2 at 10-11), and its executive director, (ECF No. 79-9, MVH Dep., at 5). As director, she does whatever is needed, including cleaning dishes and changing diapers. *Id.* When Plaintiff was at the Beltway location, MVH had daily interactions with her. *Id.* at 6. Although the nature of Plaintiff's position did not require a set schedule of hours, MVH expected her to be there on time and on the days scheduled. *See id.* at 7-8. MVH supervised Plaintiff's work performed as a caregiver and as an assistant director; had authority to hire, fire, and discipline her; and would recommend pay raises when warranted. *Id.* Although she knows about LIGHT, she was not involved with it. *Id.* at 6.

## II. Employment Relationship

Plaintiff undoubtedly had an employee-employer relationship where she would provide services as a childcare giver (sometimes referred to as a teacher) or assistant director for an hourly wage. (ECF No. 78-3, Pl.'s Dep., at 9, 13). MVH hired her to work at Habitat. *Id.* at 14. During her employment with Habitat, SVH and MVH were immediate supervisors. (ECF No. 74-1 at 56-57; ECF No. 78-3 at 13-14).

While working as assistant director, Plaintiff received an hourly rate of $9.00. (ECF No. 78-3 at 13). She was responsible for making "sure everything was running smoothly" and would keep track of employee hours, including her own. *Id.* at 13-14, 21. With the promotion, she had less focus on the children and more administrative responsibilities. (ECF No. 78-2 at 14). In the new role, she would answer calls, collect funds, do time sheets, and "pretty much" supervise

the teachers to make sure things "were within balance." *Id.* As part of her work, she would show the children movies, such as "An American Tail: Fievel Goes West," or a television show such as "Dora the Explorer." (ECF No. 79-1, Pl.'s Decl., ¶ 6). She would use the internet to submit her time cards to supervisors through electronic mail every two weeks. *Id.* ¶ 7.

The parties disagree about other aspects of Plaintiff's work. She asserts that throughout her employment she would routinely (generally once a week) order or purchase and handle learning supplies for the school. *Id.* at ¶ 4. She further asserts that her work routine included using her own vehicle or a company van to transport school children to facilities of Defendants. *Id.* ¶ 5. But Defendants assert that she never purchased or called vendors to order supplies. (ECF No. 81-1, SVH Decl., ¶ 4). And, while Plaintiff would use a Dodge Caravan to pick up children enrolled in Habitat's after school program, she would only drive two blocks and strictly for Habitat's purposes even though LIGHT owned the van and had loaned it to Habitat as a donation for Habitat uses. *Id.* ¶¶ 5-6. Defendants also assert that Plaintiff was never asked to use her own vehicle. *Id.* ¶ 6.

Plaintiff testified that she would record some hours "more to the right side of the paper and that's what would be cash." ECF 78-3 at 24. Although she identified Habitat as who she was working for when she was not paid overtime, *see id.*, she has added LIGHT as a defendant given Defendants' position that she volunteered some time to Habitat through an arrangement with LIGHT. She testified that she has never heard of LIGHT, and if she had filled out the paperwork recording her participation, she "would have spelled [her] kids' names right and . . . would not have put Steve Van Horne as [her] contact person." *Id.* at 26, 42.

According to SVH, however, Plaintiff "asked for help from LIGHT." (ECF No. 78-2 at

8

18). He testified that, when someone who works for a non-profit needs financial assistance, LIGHT "is ready to help." *Id.* When he learned that Plaintiff was having financial troubles while she was working for Habitat as an assistant director, he referred her to LIGHT for help so long as she volunteered for a non-profit organization like Habitat. *Id.* at 18-19. LIGHT's board would decide who would be assisted. Id. at 55. Plaintiff could volunteer for any non-profit and receive the same assistance. *Id.* at 20. She would decide how much time she would volunteer and could "stop at any time." *Id.* at 58. Although she could have selected any non-profit, she volunteered at Habitat. (ECF No. 74-1 at 37).

According to SVH, in return for the volunteering, LIGHT would pay a stipend so Plaintiff could pay her bills. (ECF No. 78-2 at 18). The arrangement was up to her. (ECF No. 79-2 at 18.) Because she asked to be paid for her volunteer time at her normal hourly rate, "her stipend was paid at her hourly rate multiplied by the number of hours she volunteered every week." (ECF No. 74-1 at 35). Based on that agreement, her stipend would vary weekly. *Id.* This stipend calculation was atypical for LIGHT, which would normally pay a set stipend weekly. *Id.*

Plaintiff controlled her own time sheets and according to SVH she would make a notation on the time sheet that she was volunteering certain hours. (ECF 78-2 at 24). So that everyone would "figure out the hours that she was volunteering, she would put that at the far right end of that particular day on the time sheet." *Id.* at 25. She was not paid overtime if her hours for Habitat combined with her volunteer time for LIGHT exceeded forty. *Id.* at 28. Habitat paid her for the non-volunteer time and LIGHT paid her a stipend for the volunteer hours. *Id.* The stipend was given as cash gift. (ECF No. 79-2 at 19-21). Plaintiff's duties did not change when she performed work for Habitat and when she volunteered time there for LIGHT. (ECF No. 74-

1 at 27; ECF No. 79-2 at 17-18).

One or more of the named defendants employed Plaintiff from approximately March 26, 2014, through March 18, 2016. The parties dispute who constitutes her employer. As Plaintiff has stressed in her motion, she claims to have never heard of LIGHT until she received written discovery responses from Defendants. (ECF No. 74 at 2 n.1). In support of their motion, Defendants have provided Plaintiff's own deposition testimony to support her position that she has no knowledge of or connection with LIGHT. (*See* ECF No. 78-3 at 26, 42). She asserts that Habitat and the individual defendants were paying her a portion of her work hours in cash to avoid paying her overtime and limit their employer tax liability exposure. (*See* ECF No. 74 at 2 n.1). Although she believes that Defendants fabricated the volunteer arrangement as a defense to this action, she added LIGHT as a defendant and argues that the two entities constitute a single employer for purposes of the FLSA. *See id.* She claims that she routinely worked overtime hours that Defendants failed to pay at an overtime rate in violation of the FLSA.

## LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "As to materiality, the substantive law will identify which facts are material" and a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When "the evidence is such that a

---

[5]Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

reasonable jury could return a verdict for the nonmoving party," a dispute over a material fact qualifies as "genuine" within the meaning of Rule 56. *Id.* Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether to grant summary judgment, the courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the movant carries that initial burden, the burden shifts to the party opposing the motion to present competent summary judgment evidence showing the existence of a genuine fact dispute. *Matsushita*, 475 U.S. at 586-87; *see also*, Fed. R. Civ. P. 56(c). Once the burden shifts to the nonmoving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. In other words, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

**ANALYSIS**

Both sides seek partial summary judgment in this case. Given the nature of the legal issues and the briefing, an overview of the law is warranted.

## I. Applicable Law

With exceptions not relevant here, the FLSA requires employers to pay one and a half times an employee's regular rate for any time worked over forty hours per week. *See* 29 U.S.C. § 207(a)(1).[6] More particularly, § 207(a)(1) provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

This provision requires (1) an employee-employer relationship; (2) coverage, i.e., an employee or enterprise-employer that engages in commerce or in the production of goods for commerce; and (3) a workweek that exceeds forty hours.

### A. Employee-Employer Relationship

When determining who are "employees" under the FLSA, "common law employee categories or employer-employee classifications under other statutes are not of controlling significance" because the FLSA "contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not

---

[6]Although § 207 has been amended since the relevant time for this action, i.e., March 26, 2014 through March 18, 2016, no amendment affects the FLSA provisions and definitions at issue in this case.

deemed to fall within an employer-employee category." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947) (citations omitted). Further, the Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959)).

The FLSA broadly defines terms such as "employer," "employee," and "employ." Under the FLSA, "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). In general, an "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). But that definition may differ for individuals "employed by a public agency," employers engaged in agriculture, and for "any individual who volunteers to perform services for a public agency." *See id.* § 203(e)(2), (3), and (4). And an "'Employer' includes any person acting directly or indirectly in the interest of an employer" except for situations involving labor organizations. *Id.* § 203(d).

Courts have interpreted the statutory definition of "employer" as permitting one or more joint employers. *See Falk v. Brennan*, 414 U.S. 190, 165 (1973) (recognizing that the maintenance workers were employees of both the building owners and the company rendering management services for the owners); *Hodgson v. Griffin and Brand of McAllen, Inc.*, 471 F.2d 235, 237-38 (5th Cir. 1973) (discussing joint employer status); *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir. 1968) (recognizing the concept of joint employers). Additionally, a federal regulation directly addresses the issue of joint employment. *See* 29 C.F.R. § 791.2.

While the FLSA does not preclude an employee from being separately employed by multiple, distinct employers, any "determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act

depends upon all the facts in the particular case." *Id.* § 791.2(a). In pertinent part, the regulation states:

> If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.

*Id.* (footnotes omitted). Both the statutory definition of "employer" and the Congressional purpose of the FLSA, "require that employees generally should be paid overtime for working more than the number of hours specified in [29 U.S.C. § 207(a)], irrespective of the number of employers they have." *Id.* § 791.2(a) n.5. Naturally, "an employer should not be held responsible for an employee's action in seeking, independently, additional part-time employment," but when "two or more employers stand in the position of 'joint employers' and permit or require the employee to work more than the number of hours specified in [§ 207(a)], both the letter and the spirit of the statute require payment of overtime." *Id.*

The regulation identifies three, non-exclusive situations where "a joint employment relationship generally will be considered to exist" when "the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek." *Id.* § 791.2(b). Such a situation generally exists when "there is an arrangement between the employers to share the employee's services" or "one employer is acting

directly or indirectly in the interest of the other employer (or employers) in relation to the employee." *Id.* § 791.2(b)(1) and (2). Similarly, such a situation generally exists when "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." *Id.* § 791.2(b)(3).

For purposes of the FLSA, whether an individual or entity "is an employer or joint employer is essentially a question of fact." *Wirtz*, 405 F.2d at 669; *accord Pearson v. Frequency Car Audio #1, L.L.C.*, 741 F. App'x 275, 276 (5th Cir. 2018) ("Joint employer status is a question of fact.").[7] Courts "rely on the economic reality test when determining a party's status as an

---

[7]There is some confusion or disagreement on this matter. *See Joaquin v. Coliseum Inc.*, No. A-15-CV-787-LY, 2016 WL 3906820, at *3 (W.D. Tex. July 13, 2016) (recommendation of Mag. J.), *approved sub nom. Joaquin v. Hinojosa*, 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016). The court in *Joaquin* states: "Whether a person or an entity is an 'employer' under the statute is a question of law. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985); *but see Donovan v. Sabine Irrigation*, 695 F.2d 190, 194 (5th Cir. 1983) (holding the issue of whether or not a party is a *joint employer* for the purposes of the Fair Labor Standards Act is a question of fact)." In *Beliz*, the Fifth Circuit stated:

> "This court has repeatedly held that the ultimate conclusion that an individual is an 'employee' within the meaning of the [Fair Labor Standards Act] is a legal determination rather than a factual one." McLeod correctly points out that, while this rule has been stated repeatedly, we have not always followed it. Thus, in *Hodgson v. Griffin and Brand of McAllen, Inc.*, we said, quoting *Wirtz v. Lone Star Steel Company*: "Whether a person or corporation is an employer or joint employer is essentially a question of fact," and we held the conclusion subject to review under the clearly erroneous standard, affirming the district court's judgment. Similarly, in *Donovan v. Sabine Irrigation Co., Inc.*, we said the issue is "essentially a question of fact." Even Homer nods, however, and both the weight of our decisions and the weight of authority in other circuits support the characterization as one of law, while, of course, subsidiary findings are of fact.

765 F.2d at 1327 (footnotes and citations omitted). However, it is black letter law that one panel cannot overturn a prior panel. *See Macktal v. U.S. Dep't of Labor*, 171 F.3d 323, 328 (5th Cir. 1999). *Wirtz*, as the earlier circuit precedent, controls unless the law is changed by the Supreme Court or an en banc decision of the Fifth Circuit. *See id. Wirtz*, furthermore, relied on *Boire v. Greyhound Corporation*, 376 U.S. 473 (1964) (decision on the National Labor Relations Act) as support for its statement of law. *See* 405 F.2d at 669.

employer under the FLSA." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). They like-wise rely on the economic realities, rather than "the form of the relationship," to determine questions of joint employment for purposes of the FLSA. *See Hodgson*, 471 F.2d at 237-38. And courts liberally construe the FLSA and its definitions to give proper effect to the remedial intent of Congress in enacting the Act. *See Orozco*, 757 F.3d at 448; *Reich v. Circle C. Invests., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).

In addition, whether "an individual is an 'employee' within the meaning of the FLSA, the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship." *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. Unit A Apr. 1981). Placing a label, such as independent contractor, on an individual does not remove the worker from the protections of the FLSA. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). Whether a defendant is an employer "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" *Hodgson*, 471 F.2d at 237 (quoting *Rutherford Food Corp.*, 331 U.S. at 730).

The Fifth Circuit "has summarized the proper approach to be taken and" set out the following "important factors":

> (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?"

*Id.* at 237-38 (quoting *Wirtz*, 405 F.2d at 669).[8]  Over time, courts have stated the economic

---

[8] These factors differ from those used to determine whether an individual is an employee or an independent

reality test as "whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)); *accord Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (holding that the "'economic reality' test includes inquiries into" those same four issues). Although "each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless." *Id.* at 357. Furthermore, in circumstance such as those here, where there may be more than one employer, courts "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id.* at 355 (quoting *Graves*, 909 F.2d at 1556); *accord Orozco*, 757 F.3d at 448.

"The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) (quoting *Gray*, 673 F.3d at 357). Thus, business owners in addition to shareholders, officers, or members who have operational control over employees may be liable under the FLSA. *See Gray*, 673 F.3d at 357. "An individual's operational control can be shown through his [or her] power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records." *Id.* But

---

businessman. Courts consider five criteria "to guide the determination of whether the individual whose status is in doubt is in 'economic reality' an independent businessman: (1) the permanency of the working relationship, (2) the opportunity for profit and loss, (3) investment in material, (4) the degree of control, and (5) the individual's skill." *Donovan*, 642 F.2d at 143. This determination, furthermore, is a question of law. *Id.* at 143 & n.4; *Shultz v. Hinojosa*, 432 F.2d 259, 264 (5th Cir. 1970). Like the factors noted in *Hodgson*, courts make the determination "upon the circumstances of the whole activity," not isolated factors. *Rutherford Food Corp.*, 331 U.S. at 730.

the Fifth Circuit has "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company." *Id.*

## B. Coverage

Coverage under the overtime provision of the FLSA, 29 U.S.C. § 207(a)(1), is predicated on the employee either engaging in commerce or in the production of goods for commerce or being "employed in an enterprise engaged in commerce or in the production of goods for commerce." Courts refer to these two coverage alternatives as "individual coverage" for the employee's own actions and as "enterprise coverage" for being employed in an enterprise engaged in such activities. *See Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Either type of coverage is sufficient to invoke the protections under the FLSA. *See id.*

"The existence and scope of an 'enterprise' play pivotal roles in enterprise coverage analysis." *Brock v. Cruz*, 357 F. Supp. 3d 581, 586 (S.D. Tex. 2019).

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

29 U.S.C. § 203(r)(1).[9] Furthermore, "[f]or purposes of paragraph (1), the activities performed by any person or persons . . . in connection with the operation of a . . . preschool, elementary or secondary school . . . (regardless of whether or not such . . . school is operated for profit or not for

---

[9]This provision excludes certain retail or service establishments from the definition, but such exclusion is not relevant to this case.

profit) . . . shall be deemed to be activities performed for a business purpose." *Id.* § 203(r)(2)(A).

Non-profit institutions "are generally exempt from FLSA coverage except to the extent that they engage in commercial activity performed for a 'business purpose.'" *Armas v. St. Augustine Old Roman Catholic Church*, No. 3:17-CV-2383-D, 2019 WL 2929616, at *6 (N.D. Tex. July 8, 2019) (citing *Tony & Susan Alamo Found.*, 471 U.S. at 297). However, "when a non-profit institution operates a *school*," § 203(r)(2)(A) deems its activities as "'performed for a business purpose,' and therefore covered under the FLSA." *Id.*

As set out in § 203(r)(1), the term "enterprise" may encompass more than a single establishment or corporate or other organizational unit. Within the meaning of the FLSA, an "enterprise" is not synonymous with an "employer," *see* 29 C.F.R. § 779.203, and "it is the 'enterprise' – not the plaintiff's employer – that is 'the unit for determining which employees not individually covered by the' FLSA are still entitled to its protections," *Brock*, 357 F. Supp. 3d at 586 (quoting 29 C.F.R. § 779.201).

The term "establishment," as used in the FLSA, "refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several separate places of business." 29 C.F.R. § 779.23. When multiple establishments or units comprise the enterprise, some refer to the collective enterprise as a "single integrated enterprise," but the collective enterprise "is more accurately described as a 'single' or 'common enterprise.'" *See Joaquin v. Coliseum Inc.*, No. A-15-CV-787-LY, 2016 WL 3906820, at *5 (W.D. Tex. July 13, 2016) (recommendation of Mag. J.), *approved sub nom. Joaquin v. Hinojosa*, 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016); *accord Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994) (determining whether multiple entities were a "single enterprise"); *Brock*, 357 F. Supp. 3d at 586 (referring to

such a collective enterprise as a "single enterprise"); *Lucas v. BMS Enters., Inc.*, No. 3:09-CV-2159-D, 2010 WL 2671305, at *3 n.8 (N.D. Tex. July 1, 2010) (referring to such a collective enterprise as "a common enterprise"). "A single enterprise may be 'operated by one or more employers' or 'composed of a number of establishments.'" *Brock*, 357 F. Supp. 3d at 586 (quoting 29 C.F.R. § 779.203). Furthermore, "a single employer may operate more than one enterprise" and an "enterprise" may not be "coextensive with the entire business activities of an employer." *Id.* (same).

"[T]hree elements must coexist" to support finding a single or common enterprise "under the FLSA: (1) related activities; (2) unified operation or common control; and (3) a common business purpose." *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977) (citing among other cases *Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1970)); *accord Bay, Inc.*, 23 F.3d at 114. "In addressing each of these elements," the courts liberally construe "the FLSA while applying it 'with reason and in common sense fashion.'" *Bay, Inc.*, 23 F.3d at 114 (quoting *Ashy*, 555 F.2d at 1234).

In § 203(s)(1), the FLSA also defines an "[e]nterprise engaged in commerce or in the production of goods for commerce." For purposes of this case, two ways provided in that section are particularly relevant. First, an enterprise meets the definition when it

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

*Id.* § 203(s)(1)(A). Given this expansive definition added to the FLSA by amendment in 1974,

the Fifth Circuit has indicated that the FLSA essentially covers every enterprise that meets the dollar volume of business. *See Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 501-02 & n.8 (5th Cir. 1975).

Second, an enterprise meets the definition if it "is engaged in the operation of a . . . preschool . . . (regardless of whether or not such . . . school is public or private or operated for profit or not for profit)." 29 U.S.C. § 203(s)(1)(B). "The FLSA does not define 'preschool' or directly address whether a daycare may be considered an enterprise engaged in commerce." *Smith v. Goforth*, No. 6:15-CV-324-RP, 2016 WL 6091546, at *3 (W.D. Tex. Oct. 18, 2016). And "while the Fifth Circuit has not addressed whether it considers daycare facilities to be 'preschools' under the FLSA," the Department of Labor generally views daycare centers as analogous to a preschool for purposes of the FLSA. *See id.* (citing Op. Letter Fair Labor Standards Act (FLSA), 1999 WL 1002394). Additionally, "substantial authority" holds "that child day care centers should be considered 'preschools' for the purposes of the FLSA." *Id.* (citing *Perez v. Contingent Care, LLC*, 820 F.3d 288 (8th Cir. 2016); *Reich v. Miss Paula's Day Care Ctr., Inc.*, 37 F.3d 1191, 1197 (6th Cir. 1994); *United States v. Elledge*, 614 F.2d 247, 250 (10th Cir. 1980)).

Although the "FLSA defines the operative language as to enterprise coverage . . . it does not define it as to individual coverage." *Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 698 (N.D. Tex. 2018). The Fifth Circuit, however, has utilized a "practical test" to determine whether one has personally engaged in interstate commerce. *Id.* (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam)). This test asks "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local

21

activity." *Sobrinio*, 474 F.3d at 829 (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)). As noted in *Sobrinio*, "any regular contact with commerce, no matter how small, will result in coverage." *Id.* (quoting *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979)). Furthermore, Plaintiff has the "burden to prove" coverage under the FLSA. *Id.*

## II.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks partial summary judgment on a single issue – that the two entity defendants constitute a single employer under the FLSA.  (ECF No. 74 at 1).  If the Court finds otherwise, she urges it to find that Defendants constitute a single joint employer.  *Id.*  These are proper issues for a motion for partial summary judgment.  *See Hernandez v. Trendy Collections, LLC*, No. 3:17-CV-2049-BN, 2018 WL 4103723, at *16 (N.D. Tex. Aug. 29, 2018) (addressing and resolving similar motion for partial summary judgment).  But, because Plaintiff has the burden to establish employer status to support her FLSA claim, she must establish the employer status of each defendant "beyond peradventure."  *See id.* (citation omitted).  This is "a 'heavy' burden." *Id.* at *3, 13 (citations omitted).

Although Plaintiff starts with a clear claim regarding the employer status of the two entity defendants, she conflates the employer issue with one involving an integrated enterprise by relying on non-FLSA cases.  (*See* ECF No. 74 at 3-4).  She is not the first party to conflate the two issues.  *See Austin v. Onward, LLC*, No. 3:14-0350, 2015 WL 12940029, at *6 (S.D. Tex. Apr. 2, 2015) (noting a similar conflation of issues).  Relying on *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983), a Title VII case addressing when "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise:  a single employer," she argues that partial summary judgment is appropriate as to whether the entities

constitute a single employer under the FLSA. (*See* ECF No. 74 at 4-6 (quoting *Trevino*, 701 F.2d at 404)). *Trevino* sets forth four factors to consider "in determining whether distinct entities constitute an integrated enterprise . . . (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." 701 F.2d at 404.

In response, Defendants neither address the *Trevino* factors nor the employer status of the entities. (*See* ECF No. 78 at 4-6). But they do rely on Plaintiff's deposition testimony that she had no knowledge of or connection with LIGHT and that she had unpaid overtime for work for Habitat. *Id.* at 2, 6. They purport to address whether the entities constitute "a single employer or enterprise" under the three-factor test set out in *Ashy* and primarily argue that Plaintiff has not established that the two entities share a "common business purpose" as required by that test. (*See* ECF No. 78 at 4-6). That case, however, interprets "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r), and sets out three elements that "must coexist for there to be enterprise coverage under the FLSA." *See* 555 F.2d at 1230-31. The *Ashy* test concerns whether the entity defendants constitute a single or common enterprise, not whether they may be considered to be the same employer or joint employers.

In reply, Plaintiff notes that Defendants fail to address her single-employer argument. (*See* ECF No. 80 at 1 n.1). She contends that Defendants seemingly agree that their operations are interrelated and have centralized control of labor relations, common management, or common ownership. *Id.* at 2. She then argues that the Court should grant her motion for summary judgment even under Defendants' test. *Id.* at 2-3.

Both sides appear to confuse employer status with enterprise coverage. "The question of

whether two defendants constitute an enterprise, however, speaks to the requirement that the plaintiff's employer be engaged in commerce, not to whether certain defendants are joint employers under the FLSA." *Austin*, 2015 WL 12940029, at *6 (citing *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 517-18 (1973); *Howard v. John Moore, L.P.*, No. CIV.A. H-13-1672, 2014 WL 5090626, at *4 (S.D. Tex. Oct. 9, 2014)). The terms "enterprise" and "employer" are distinct terms within the meaning of the FLSA and serve different purposes. *See* 29 C.F.R. § 779.203. As courts have recognized, "the 'enterprise' question goes to coverage under the FLSA, while the 'joint employer' issue goes to liability." *Austin*, 2015 WL 12940029, at *6 (citing *Patel v. Wargo*, 803 F.2d 632, 636-37 (11th Cir. 1986)); *accord Lucas v. BMS Enters., Inc.*, No. 3:09-CV-2159-D, 2010 WL 2671305, at *3 n.8 (N.D. Tex. July 1, 2010) (relying on *Patel*). The *Ashy* test has no applicability to the employer status issues raised in Plaintiff's motion for summary judgment.

Turning to Plaintiff's proposed test, the Court is aware of only one case in the Fifth Circuit in which a party invoked the *Trevino* test in an FMLA context. *See Coleman v. FFE Transp. Servs., Inc.*, No. 3:12-CV-1697-B, 2013 WL 1914932, at *5 (N.D. Tex. May 9, 2013). The plaintiff in *Coleman* submitted the *Trevino* test and a joint employer test as possible means to determine "whether an entity constitutes an employer," defendant took no position as to the correct test to apply, and the court concluded that it "need not decide which test applies" because the defendant – as the movant – had failed to carry its summary judgment burden on the issue. *Id.*

Neither proposed test is the appropriate means for determining the issues raised through Plaintiff's motion for summary judgment. Although Plaintiff at times speaks in terms of an integrated enterprise, she essentially wants her hours worked during the relevant time period to be

aggregated for purposes of computing overtime. (*See* ECF-74 at 3 (relying on 29 C.F.R. §

791.2)). As set out earlier, § 791.2 addresses joint employment. Because that issue is distinct

from issues concerning enterprises, the regulation naturally does not address enterprises.

Additionally, utilizing the same facts, Plaintiff urges the Court to find that Defendants jointly

employed her if it does not find the entities to be a "single employer." *See id.* at 6-7. The motion

as a whole shows that Plaintiff seeks summary judgment on grounds that the two entities are

actually just one employer or that LIGHT can be combined with Habitat as joint employers.

With respect to whether the Court should consider the two entities as one employer for

purposes of Plaintiff's overtime claim, the courts have interpreted the statute as permitting joint

employers, *see, e.g., Falk v. Brennan*, 414 U.S. 190, 165 (1973), and § 791.2 addresses whether

employers should be considered jointly or separately. Furthermore, the courts examine the

economic realities when determining whether a party is an employer or joint employer under the

FLSA. *See, e.g., Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Hodgson v. Griffin and

Brand of McAllen, Inc.*, 471 F.2d 235, 237-38 (5th Cir. 1973). Neither the statute nor the regu-

lation address whether or when two entities may or should be considered as a single employer

outside the joint employment context. While some circumstances may create a need to consider

two purportedly separate entities as one, the alleged failure to pay overtime in this case does not

create such a need given the available methods for finding joint employers for purposes of the

FLSA overtime provision.

Moreover, a "'single integrated enterprise' or 'single employer' theory, is in fact not recog-

nized as being applicable to determining who the 'employer' is for FLSA cases." *See Joaquin*,

2016 WL 3906820, at *5. Such a theory "is more accurately described as a 'single' or 'common

enterprise' theory, and in the FLSA context it only applies to the question of whether a named defendant is sufficiently large to be governed by the Act." *Id.*; *accord Lucas*, 2010 WL 2671305, at *3 n.8 (recognizing that, because "FLSA liability is predicated only on an employee-employer relationship," a defendant's involvement in a common enterprise is material only "to determine whether the defendant is large enough to be subject to the FLSA").[10]

The Court finds no basis for considering LIGHT and Habitat to be the same employer. It instead applies the economic reality test to determine whether the entities qualify as employers under the FLSA, and if so, whether they are properly considered to be joint employers under the facts of this case, including the factors set out in § 791.2. Although both determinations involve the application of the economic reality test, they are separate determinations because, as § 791.2 makes clear, not all employers of an individual are necessarily properly joined with another employer for FLSA purposes. While neither side presents this test to address the issues raised in Plaintiff's motion, both sides provide summary judgment evidence relevant to the inquiry.

There is no need to specifically determine Habitat's status as an employer because no one disputes that it constitutes Plaintiff's employer. While it appears that Defendants may similarly not dispute that LIGHT qualifies as an FLSA employer even though it disputes whether the entity may be joined with Habitat for FLSA purposes, the Court proceeds as though they not only oppose

---

[10]While *Lucas* and *Joaquin* appear to limit the enterprise issue to the size of the defendant, the issue is actually the broader issue of coverage under the FLSA. *See Patel*, 803 F.2d at 637 (holding that "[t]he finding of an enterprise is relevant only to the issue of coverage"). Both *Lucas* and *Joaquin* relied upon that holding in *Patel*. *See Joaquin*, 2016 WL 3906820, at *5 (quoting *Lucas*, which relies on *Patel*); *Lucas*, 2010 WL 2671305, at *3 n.8 (citing *Patel*). Although size of the defendant may be an issue of coverage, another issue of coverage involving an enterprise may also arise under the overtime provision of § 207(a)(1) in the context of engaging in commerce or in the production of goods for commerce.

finding LIGHT to be a joint employer of Plaintiff, but also oppose finding LIGHT to be an employer at all. Before considering the economic reality test to determine whether LIGHT is an employer of Plaintiff under the FLSA, the Court considers whether the alleged volunteer arrangement between Plaintiff and LIGHT impacts the employee-employer relationship.

## A. Exemption for Volunteers

Defendants assert that Plaintiff volunteered some of the time she worked at Habitat. Prior to the Court permitting her to file her amended complaint naming LIGHT as a fourth defendant in this action, Plaintiff testified that she did not know about LIGHT and did not volunteer any hours. While disputing the volunteer arrangement, she still added LIGHT as a defendant to cover the possibility that she worked some time for LIGHT in addition to the time she worked for Habitat. Moreover, for purposes of summary judgment, Plaintiff, for the most part, appears to accept the arrangement as set out by Defendants. And, if the Court denies her motion for partial summary judgment, she asserts that "she reserves the right to argue at trial that she never entered into this 'volunteer arrangement' with LIGHT in the first place." (ECF No. 74 at 2 n.1).

Defendants assert the volunteer arrangement but then want to hold Plaintiff to her deposition testimony that she does not know about LIGHT and that she worked for Habitat when she was not paid overtime. Given the nature of the purported volunteer arrangement, Plaintiff's adding LIGHT as a defendant, and her stance in her motion for partial summary judgment, the circumstances warrant directly considering whether the volunteer arrangement affects the employer-employee relationship in this case.

"Congress created an exemption to the FLSA's coverage applicable in the public employment context" when "an individual is a 'volunteer' instead of an 'employee.'" *Purdham v. Fairfax*

*Cnty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011). More specifically, the FLSA excludes from

> [t]he term "employee" . . . any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate government agency, if –
>
>> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
>>
>> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A). The FLSA also excludes from the "term 'employee' . . . individuals who volunteer their services solely for humanitarian purposes to private non-profit food banks and who receive from the food banks groceries." *Id.* § 203(e)(5).

Neither of these exemptions – 29 U.S.C. § 203(e)(4)(A) or (e)(5) – remove Plaintiff from the definition of employee because the alleged volunteer arrangement was not to volunteer services for a public agency or to a private non-profit food bank. And, even if Plaintiff were "volunteering" at a public agency or a private non-profit food bank, she would not qualify as a volunteer under the facts of this case upon a review of the totality of the circumstances and the objective facts surrounding the services she performed as set out by Defendants.

"The FLSA does not itself define 'volunteer,' but pursuant to a Department of Labor regulation promulgated under the FLSA, a 'volunteer' is an 'individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered.'" *Purdham*, 637 F.3d at 427 (quoting 29 C.F.R. § 553.101(a)). Volunteer status is not lost merely because individuals are "paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service." 29 C.F.R. §

553.106(a). But individuals do not qualify for volunteer status unless they offer their services "freely and without pressure or coercion, direct or implied, from an employer." *Id.* § 553.101(c). Further, "[a]n individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer." *Id.* § 553.101(d). "This latter provision reflects the unmistakable intention of the Department of Labor (and no doubt of Congress) to prohibit 'any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to 'volunteer' their services.'" *Purdham*, 637 F.3d at 428 (quoting 29 C.F.R. § 553.101(b)).

The Fifth Circuit has held that "the determination of whether an individual is an employee or a volunteer under the FLSA is a question of law." *See Cleveland v. City of Elmendorf*, 388 F.3d 522, 528 (5th Cir. 2004). And it has applied the regulatory definition of volunteer "in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided." *Id.* Courts "review 'the objective facts surrounding the services performed to determine whether the totality of the circumstances' establish volunteer status, or whether, instead, the facts and circumstances, objectively viewed, are rationally indicative of employee status." *Purdham*, 637 F.3d at 428 (quoting *City of Elmendorf*, 388 F.3d at 528).

Plaintiff does not meet the definition of a volunteer under 29 C.F.R. § 553.101(a) because she did not perform the services rendered without expectation or receipt of compensation. To the contrary, she fully expected to be compensated at her hourly rate and, in fact, received such compensation. Under Defendants' facts, the volunteer arrangement would not have existed but

29

for the stipend to be provided to Plaintiff. Labeling Plaintiff as a volunteer does not affect the FLSA analysis.

While an argument might be made that Plaintiff was merely paid a nominal fee that does not remove volunteer status, the Court finds from the economic realities of the alleged volunteer arrangement that the hourly wages paid to Plaintiff for her volunteer time are compensation under the FLSA and not a nominal fee. *See Mendel v. City of Gibraltar*, 727 F.3d 565, 570-71 (6th Cir. 2013) (discussing nominal fees in context of firefighters claiming to be volunteers). "A nominal fee is not a substitute for compensation and must not be tied to productivity." 29 C.F.R. § 553.106(e). And "[w]hether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation." *Id.* § 553.106(f). Under the alleged volunteer arrangement in this case, Plaintiff was paid a regular wage for whatever time she chose to volunteer at Habitat. The Court finds that, as a matter of law, the compensation Plaintiff received did not qualify as a nominal fee.

For all of these reasons, the Court concludes that the volunteer arrangement alleged by Defendants does not impact whether Plaintiff qualifies as an employee under the FLSA or the employee-employer relationship.[11]

---

[11] While the FLSA definitions are not governed by the common law, *see Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947), Plaintiff would not qualify as a volunteer even under the common law. *See* Restatement of Employment Law: Volunteers Are Not Employees § 102 (Am. Law Inst. 2019) ("An individual is a volunteer and not an employee if the individual renders uncoerced services to a principal without being offered a material inducement."). Plaintiff was certainly offered a material inducement to "volunteer" at Habitat.

## B. Employer Status of Light

As recited earlier, under the economic reality test, the courts consider four factors to determine whether a defendant is an employer under the FLSA: (1) authority to hire and fire employees, (2) supervision and control of employee work schedules or conditions of employment, (3) determination of rate and method of payment, and (4) maintenance of employment records. *Gray*, 673 F.3d at 355.

The record shows that LIGHT possessed the ability to approve Plaintiff for the volunteer arrangement. It also had the ability to terminate the arrangement. While these abilities differ in terminology from hiring and firing, they appear the same in substance, especially since the arrangement was for LIGHT to pay Plaintiff a cash stipend equal to the hours she worked as a volunteer multiplied by her rate of pay at the place she volunteered.

According to the summary judgment record, LIGHT did not supervise or control Plaintiff's work schedule, but its agreement to pay Plaintiff a stipend was conditioned on her volunteering at a non-profit organization. The stipend amount was directly related to the number of hours volunteered. And, while Plaintiff volunteered for Habitat on behalf of LIGHT, SHV supervised her in both his role as board member for LIGHT and administrator for Habitat.

Plaintiff's rate of pay while volunteering at Habitat on behalf of LIGHT was the same as her rate at Habitat. She asked for a cash payment at that rate per hour volunteered. Although she essentially set the rate and method of payment, LIGHT had to agree to it. In that sense, LIGHT had ultimate control over the determination of the rate and method of payment.

From the facts presented, it is not certain whether LIGHT maintained employment records for Plaintiff. It does appear that it kept some sort of record of her volunteer time and its payments

to her. Plaintiff submitted time sheets recording the time she worked at Habitat and the hours she volunteered there through LIGHT. (ECF No. 79-2 at 21). Her time sheets went through a three-tiered review by (1) Lindy Vinson, assistant director for Habitat, (2) SVH, and finally, (3) the accountant. *Id.* at 21-22. In addition, LIGHT's tax returns included aggregate amounts for grants and other assistance to domestic individuals and the stated amounts included Plaintiff's stipends. (ECF No. 79-2 at 38-39).

While it is unclear if each economic factor exists such that LIGHT qualifies as an employer of Plaintiff under the FLSA, the economic reality test does not require that each element be present in every case. The uncertainties, moreover, do not create a genuine dispute of material fact. Under the totality of the circumstances and viewing the facts in the light most favorable to Defendants, the Court finds that LIGHT qualifies as an employer of Plaintiff for purposes of the FLSA overtime provisions. Applying the economic reality test, the Court concludes that Plaintiff has carried her burden to show that LIGHT is an employer under the FLSA.

Once Plaintiff carries that burden, Defendants must come forward with competent summary judgment evidence showing a genuine fact dispute on the issue. However, in response to the motion, Defendants do little, if anything, to contest LIGHT's status as an FLSA employer. They do rely on the Plaintiffs' deposition testimony where she asserts that she was working for Habitat when she was not paid overtime and that she had no knowledge of LIGHT. But her testimony indicating that she worked for Habitat does not preclude LIGHT from qualifying as an FLSA employer under the economic reality test. Furthermore, Plaintiff's motion is premised on the volunteer arrangement alleged by Defendants. Viewing the facts of that arrangement in a light most favorable to Defendants, the Court accepts for summary judgment purposes that the

32

arrangement existed. For such purposes, moreover, Plaintiff has in effect conceded that issue.

In addition, as concluded in the preceding section, the volunteer arrangement does not impact her employer-employee relationship with LIGHT. Labeling someone as a volunteer does not change the economic realities of the relationship. That the arrangement resulted in some differing terminology does not alter the economic realities. The label volunteer is no more dispositive than labeling someone as an independent contractor. Defendants have not carried their burden to show a genuine dispute of material fact with respect to whether LIGHT was an employer under the FLSA. Under the facts presented, including acceptance of the alleged volunteer arrangement, no reasonable jury applying the economic reality test could find LIGHT not to be an employer under the FLSA.

### C. Joint Employer

Having determined that LIGHT qualifies as Plaintiff's employer under the FLSA, the Court next must determine whether LIGHT and Habitat are her joint employers. Utilizing the same evidence described above, Plaintiff again has satisfied her burden on her motion for summary judgment. The economic realities support finding the two entities to be joint employers under the facts presented. Not only are they both employers of Plaintiff for purposes of the FLSA, but viewing the presented facts in a light most favorable to Defendants, Plaintiff has carried her burden to show that Habitat and LIGHT were not acting entirely independently of each other with respect to her employment. Nor were they completely disassociated with respect to her employment.

Because Plaintiff has carried her burden, Defendants must come forward with competent summary judgment evidence showing a genuine fact dispute regarding whether the two entities are joint employers. In response to Plaintiff's motion, Defendants focus on an alleged failure of

Plaintiff to show that the two entities share a common business purpose. However, a common business purpose is relevant to whether the entities should be considered a common or single enterprise, not whether they are joint employers. Defendants fail to show a genuine dispute of material fact as to the joint employment issue. When two employers do not act entirely independently of each other concerning an individual's employment, the employers are joint employers for purposes of the FLSA.

Accordingly, the Court finds that, viewing the facts in a light most favorable to Defendants, including acceptance of the alleged volunteer arrangement, no reasonable jury applying the economic reality test and other factors under 29 C.F.R. § 791.2(a) could find the two entities not to be joint employers under the FLSA. By paying Plaintiff a cash stipend for hours she "voluntarily" worked at Habitat, LIGHT was acting directly or indirectly in the interest of Habitat. This is sufficient for finding joint employment.

While Defendants have presented summary judgment evidence that perhaps shows a genuine dispute as to whether LIGHT and Habitat are under common control, the facts presented do not show a genuine dispute as to whether the two entities were acting entirely independently or whether they were completely disassociated with respect to Plaintiff's employment. Habitat financially benefitted by not needing to pay Plaintiff for every hour she worked there. Each hour that Plaintiff volunteered at Habitat for payment by LIGHT was an hour that Habitat would not need to pay any employee for the tasks done in those hours. Although LIGHT was providing a financial benefit to Plaintiff through the cash stipend, that fact does not change the reality that LIGHT was acting directly or indirectly in the interest of Habitat by paying Plaintiff for time worked at Habitat.

For these reasons, the Court should deny Plaintiff's motion for summary judgment to the extent it seeks a finding that Habitat and LIGHT are the same employer, but grant the motion to the extent it seeks a finding that, accepting the alleged volunteer arrangement, the two entities are her joint employers within the meaning of the FLSA.

## III. Defendants' Motion for Partial Summary Judgment

Defendants present three reasons for granting summary judgment for LIGHT and one for granting summary judgment for MVH. They first argue that summary judgment should be entered for LIGHT because no enterprise coverage exists with respect to that entity. They next argue that summary judgment should be entered for LIGHT because there is no individual coverage under the FLSA against LIGHT on the facts of this case. Additionally, they argue that LIGHT is entitled to summary judgment because there is no joint enterprise between the two entity defendants. Finally, they argue that MVH is entitled to summary judgment regarding any claim for overtime pay owed by LIGHT because MVH should not be considered as an employer for any actions she took on behalf of that entity. Neither Habitat nor SVH seek summary judgment on the claims asserted against them.

Defendants' three arguments for granting summary judgment for LIGHT all relate to coverage aspects of the FLSA. While Plaintiff has the burden to establish FLSA coverage, *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam), the Court must deny Defendants' motion as it relates to LIGHT if there is a genuine dispute as to any of the three avenues for establishing FLSA coverage. Plaintiff must only establish coverage under one of the available methods. And viewing the summary judgment evidence in a light most favorable to her, there is a genuine dispute as to whether LIGHT and Habitat comprise a joint

enterprise which would provide enterprise coverage to LIGHT.

The parties agree that *Ashy*, 555 F.2d 1228, is the relevant authority. But they disagree as whether the facts support a finding of joint enterprise coverage. Interpreting 29 U.S.C. § 203(r)(1), *Ashy* identified three elements for joint enterprise coverage under the FLSA. 555 F.2d at 1231. The entities must have related activities, either unified operation or common control, and finally, they must share a common business purpose. *Id.*

Defendants argue that Plaintiff has failed to establish that the two entities have a common purpose. (ECF No. 75 at 5). Plaintiff, however, has provided enough evidence to avoid summary judgment on this issue. Defendants' own tax documents identify both a common purpose and the same officers or trustees. (*See* ECF Nos. 74-3, 74-5, 74-7 (2014-16 taxes for LIGHT) at 1-2, 7; ECF Nos. 74-4, 74-6, 74-8 (2014-16 taxes for Habitat) at 1-2, 7). Defendants have explained the tax documents as mistakes by their accountants. (*See* ECF No. 79-2 at 52 (common purpose), 56 (common directors), 60-62 (common purpose)). LIGHT's 2014 taxes identify Habitat as a related, tax-exempt organization, (ECF No. 74-7 at 31), but Defendants portray that as an accountant mistake also, (ECF No. 79-2 at 58). Despite Defendants' attempts to explain the tax documents as mistakes, the documents create at least a material factual dispute as to whether the entities should be considered a joint enterprise for purposes of coverage.

With respect to individual coverage, the facts viewed in the light most favorable to Plaintiff show that she performed the same duties at Habitat whether she was working for that entity or "volunteering" there on behalf of LIGHT. Those duties included activities that qualify as engaging in commerce as used in 29 U.S.C. § 207(a)(1). Consequently, there is at least a genuine dispute of material fact as to whether Plaintiff engaged in commerce on behalf of LIGHT.

Furthermore, in their reply, Defendants concede that they "have never denied that Plaintiff was engaged in commerce for Habitat, only that LIGHT was not an employer as defined under the FLSA under 'individual' or 'enterprise' coverage." (ECF No. 81 at 2). They recognize that Plaintiff has pointed to work activities performed for Habitat that amount to engaging in commerce for Habitat, but not for LIGHT. *Id.* Defendants' position ignores that Habitat and LIGHT are joint employers as addressed in this recommendation and that there is a genuine factual dispute as to whether the entities comprise a joint enterprise with respect to coverage under the FLSA.

Given the factual disputes regarding individual and joint enterprise coverage, there is no need to consider whether enterprise coverage exists as to LIGHT without it and Habitat comprising a joint enterprise. Nevertheless, there is evidence that LIGHT operated a daycare as part of its activities. That activity alone shows LIGHT engaging in commerce under 29 U.S.C. § 203(s)(1)(B). To the extent that aspect of LIGHT is the same enterprise or part of the joint enterprise that employed Plaintiff, such activity could provide coverage under the FLSA. But the Court need not rely on § 203(s)(1)(B) for denying Defendants' motion. The genuine disputes as to whether there is individual coverage and whether LIGHT and Habitat constitute a joint enterprise under the FLSA provide an adequate basis to deny the motion for summary judgment as it relates to LIGHT.

Defendants also seek summary judgment with respect to MVH to the extent her liability may be based on actions taken on behalf of LIGHT. They argue that she does not qualify as an employer subject to liability based on such alleged actions. Nevertheless, they do not contest that she is an employer along with Habitat and SVH. And her role for Habitat makes her an employer for FLSA purposes. Moreover, given the issues regarding joint enterprise between Habitat and

LIGHT and the issue of the entities constituting joint employers of Plaintiff, there is at least a genuine dispute as to whether her actions on behalf of LIGHT qualify her as an employer. For these reasons, the Court should deny Defendants' motion as it relates to MVH.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court (1) **GRANT** Plaintiff's Motion for Partial Summary Judgment (ECF No. 74) to the extent she seeks to find Defendants Habitat and LIGHT are joint employers under the facts presented, including accepting the volunteer arrangement for purposes of summary judgment; (2) otherwise **DENY** that motion; and (3) **DENY** Defendants' Motion for Partial Summary Judgment (ECF No. 75). The Clerk of Court is directed to reassign this case to Senior United States District Judge Sam R. Cummings for consideration of this recommendation and for all further proceedings not referred to a United States magistrate judge. Given the recommendations set forth herein and the Second Amended Pretrial Scheduling Order (ECF No. 69), this case is ready for the Court to set all trial deadlines. Contemporaneously with this recommendation, the undersigned has directed the parties to provide available dates for trial and other information.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    **IT IS SO ORDERED this 20th day of August, 2019.**

                        _Hal R. Ray, Jr._
                        **Hal R. Ray, Jr.**
                        **UNITED STATES MAGISTRATE JUDGE**